IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LAURALEE WILSON, M.D.,            )
                                  )
                Plaintiff,        )
                                  )
     v.                           )          1:19CV801
                                  )
FORSYTH MEDICAL GROUP, LLC,       )
and NOVANT HEALTH, INC.,          )
                                  )
                Defendants.       )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiff Lauralee Wilson, M.D., brings eight state and federal claims against Defendants Forsyth Medical Group, LLC ("Forsyth") and Novant Health, Inc. ("Novant") (together, "Defendants"). (Doc. 1.) Defendants filed a partial motion to dismiss Plaintiff's state law claims for malicious interference with contract and blacklisting under Fed. R. Civ. P. 12(b)(6). (Doc. 9.) For the reasons set forth herein, the court will grant Defendants' motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint . . . ." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020). The facts, taken in the light most favorable to Plaintiff, are as follows.

## A. Parties

Plaintiff is a physician, specializing in Family Practice.
(Complaint ("Compl.") (Doc. 1) ¶ 8.) Defendant Forsyth is a
limited liability company established under North Carolina law.
(Id. ¶ 4.) It operates medical facilities in North Carolina and
other states in the Southeastern United States. (Id.) Defendant
Novant is a company established under the laws of North
Carolina. (Id. ¶ 5.) Novant also operates medical facilities
throughout North Carolina and the Southeastern United States.
(Id.) Plaintiff alleges Novant wholly owns Forsyth. (Id.)
Defendants employed Plaintiff during the relevant period. (Id.
¶ 6.)

## B. Factual Background

Plaintiff was employed by Defendants in Novant's Health
Wilkes Medical Associates family practice group ("the Wilkes
Clinic"), located in Wilkesboro, North Carolina, from 2011 until
June 22, 2018, when she was terminated. (Id. ¶ 9.)

Plaintiff alleges she was subjected to a hostile work
environment due to sexual harassment and gender discrimination
by a senior physician. (Id. ¶¶ 13-26.) Plaintiff reported the
sexual harassment and offensive behaviors to various managers.
(Id. ¶¶ 27-28.) Defendants' corporate Vice President of Human
Resources ("VPHR") contacted Plaintiff on or around June 13,

-2-

2017, telling Plaintiff that an investigation would be opened. (Id. ¶ 29.) However, even after reaching out to the VPHR numerous times in the subsequent nine months, the VPHR only replied once, in August 2017. (Id. ¶¶ 30-31.) Plaintiff alleges no investigation ever occurred. (Id. ¶ 33.)

Plaintiff alleges that the senior physician who allegedly harassed her continued to sexually harass her throughout this time. (Id. ¶ 36.)

Defendants' Area Medical Director met with Plaintiff on March 22, 2018, during which the Area Medical Director notified Plaintiff that a complaint had been made accusing her of an incident involving another staff member and "charging her with an inability to get along with other employees." (Id. ¶ 38.) Plaintiff felt that the harassment would continue and gave notice on March 23, 2018, that she would "be forced to leave her employment" in 90 days. (Id. ¶ 42.) Defendants accepted her resignation. (Id. ¶ 43.)

Thereafter, a third-party contractor was hired to conduct an investigation regarding Plaintiff's harassment complaint. (Id. ¶ 44.) Plaintiff met with the third-party contractor in May 2018, as did others who substantiated Plaintiff's reports of harassment and discrimination. (Id. ¶ 45.) As a result of the opening of the investigation, Plaintiff withdrew and revoked her

-3-

resignation in a letter to Defendants' Vice-President. (Id.
¶ 47.) However, on June 8, 2018, the Area Medical Director met
with Plaintiff and informed her that Defendants would not accept
her revocation "even in view of the fact that her initial
resignation was involuntary due to retaliation and the failure
of defendant to investigate the continuing hostile work
environment and sexual discrimination in the workplace." (Id.
¶ 49.) When Plaintiff asked why Defendants would not accept her
revocation, the Area Medical Director allegedly said that it was
clear Plaintiff did not want to work at the Wilkes Clinic and
that she was "not welcome." (Id.)

Following her termination, Plaintiff sought other
employment in Wilkes County. (Id. ¶ 52.) Plaintiff "received a
request indirectly from a recruiter employed by Wake Forest
University Baptist Medical Center [("WFU")] that she apply for a
position with the family practice group of that entity." (Id.
¶ 53.) When Plaintiff contacted the recruiter directly, the
recruiter told Plaintiff that there was an available position at
WFU and "that she would be hired in the position — indicating
that she could have any position she wanted." (Id. ¶ 54.)
Plaintiff applied for the position, and interviews were
scheduled. (Id. ¶¶ 55-56.) The interviews, however, were
cancelled, and when Plaintiff attempted to reschedule, "she was

-4-

abruptly informed by the WFU employee that there was no position available." (Id. ¶ 57.) Plaintiff alleges that after she applied, Defendants' "physicians or other employees at the Wilkes Clinic, through misrepresentations or other conduct, induced WFU not to employ plaintiff." (Id. ¶ 58.)

C.    **Procedural History**

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and Plaintiff received her right to sue letters.[1] (Id. ¶¶ 59-60.) Plaintiff then filed her Complaint in this court, bringing the following claims: two Title VII claims for discrimination and retaliation, a North Carolina state law claim for malicious interference with contract, a North Carolina state law claim for blacklisting, and an Equal Pay Act claim. (Id. at 14-20.) Defendants filed a partial motion to dismiss, (Doc. 9), and a supporting memorandum, (Mem. in Supp. of Defs.' Partial Mot. to Dismiss ("Defs.' Br.") (Doc. 10)). Plaintiff responded, (Pl.'s Resp. to Defs.' Partial Mot. to Dismiss ("Pl.'s Resp.") (Doc. 17)), and Defendants replied, (Reply in Supp. of Defs.' Partial Mot. to Dismiss ("Defs.' Reply") (Doc. 18)).

_____

[1] The EEOC apparently assigned Plaintiff two separate charge numbers. (Compl. (Doc. 1) ¶ 59.)

-5-

Defendants only move to dismiss Plaintiff's two state law claims under Rule 12(b)(6): (1) malicious interference with contract claim, and (2) her state law blacklisting claim. (Defs.' Br. (Doc. 10) at 1.)

## II.  <u>STANDARD OF REVIEW</u>

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556–57). When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. <u>Iqbal</u>, 556 U.S. at 678. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom, . . . in plaintiff's favor." <u>Estate of Williams-Moore v. All. One Receivables Mgmt., Inc.</u>, 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted). This court does not, however, accept legal conclusions as true, and "[t]hreadbare

-6-

recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## III. ANALYSIS

The court will first address Plaintiff's malicious

interference with contract claim, then her blacklisting claim.

### A.   Malicious Interference with Contract

To state a claim for malicious interference with contract,

the plaintiff must allege that:

> (1) a valid contract existed between plaintiff and a
> third person, (2) defendant knew of such contract, (3)
> defendant intentionally induced the third person not
> to perform his or her contract with plaintiff, (4)
> defendant had no justification for his or her actions,
> and (5) plaintiff suffered damage as a result.

Hines v. Yates, 171 N.C. App. 150, 157, 614 S.E.2d 385, 389

(2005) (quoting Wagoner v. Elkin City Schools' Bd. of Educ., 113

N.C. App. 579, 587, 440 S.E.2d 119, 124 (1994)); see also

Yelverton v. Yelverton Farms, Ltd., No. 5:14-CV-365-FL, 2015 WL

847393, at *11 (E.D.N.C. Feb. 26, 2015) (applying these

elements); Welch-Walker v. Guilford Cty. Bd. of Educ., No.

1:12CV149, 2014 WL 6997596, at *6 (M.D.N.C. Dec. 10, 2014)

(same).

Defendants argue that Plaintiff fails to allege sufficient

factual support for this claim. (Defs.' Br. (Doc. 10) at 4.)

Defendants specifically contend that Plaintiff fails to allege a

valid contract existed between her and WFU, that Defendants were aware of such a contract, or that Defendants "intentionally induced WFU not to perform a contract without justification." (Id.) The court agrees.

Regarding Defendants' alleged actions to induce WFU not to perform, Plaintiff alleges that "[u]pon information and belief, defendant was aware of plaintiff's application for employment at WFU; and following plaintiff's application, defendant's physicians or other employees at the Wilkes Clinic, through misrepresentations or other conduct, induced WFU not to employ plaintiff." (Compl. (Doc. 1) ¶ 83; see also id. ¶ 58.) Plaintiff also alleges that "Defendant's actions were without justification, and were taken with the design and intent to injure plaintiff or with the knowledge that their actions would have that effect." (Id. ¶ 84.)

Plaintiff alleges only vague and conclusory facts concerning Defendants' actions. There are no facts whatsoever to support a reasonable inference that Defendants took any actions regarding Plaintiff's WFU interview, much less that they ever communicated with WFU. The Complaint simply does not contain sufficient factual matter to "allow[] the court to draw the reasonable inference that the defendant is liable" and demonstrate "more than a sheer possibility that a defendant has

-8-

acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556–57).

As Plaintiff's briefing points out, to state a claim, Plaintiff must plausibly allege the "contract would have ensued but for the interference." (Pl.'s Resp. (Doc. 17) at 9.) However, Plaintiff alleges only that she was contacted by a recruiter for WFU. (Compl. (Doc. 1) ¶ 53.) Plaintiff fails to allege or describe any authority of the recruiter, and therefore Plaintiff fails to plausibly allege a basis upon which to conclude Plaintiff had any reasonable expectation to believe she would be hired, or, more specifically, any basis upon which to find the employment contract would have "ensued but for the interference." Similarly, the limited information provided by an anonymous recruiter, (see Compl. (Doc. 1) ¶¶ 53–54. 79–80), provides no basis upon which to plausibly infer malice, absence of a legitimate justification, or causation.

Plaintiff argues that WFU's sudden termination of communications with Plaintiff can "only" plausibly be explained by "defendants' interference through its misrepresentations." (Pl.'s Resp. (Doc. 17) at 10.) But Plaintiff has not submitted any facts about these alleged misrepresentations or "other conduct." Though Plaintiff contends that this is a "reasonable inference" to make, the court disagrees. There must be factual

-9-

support for an inference to be reasonable, see Iqbal, 556 U.S.

at 678, which this claim lacks, in the absence of any

description whatsoever of the recruiter, the position, the

department, the qualifications for the position, or why

Plaintiff would otherwise be a viable candidate. There are no

allegations as to what misrepresentations were made or actions

taken, only vague, conclusory statements; there are simply no

facts in the Complaint that "nudge the claim from possible to

plausible." Hudson v. Bank of Am., N.A., Action No. 3:09-CV-462,

2010 WL 2365588, at *5 (E.D. Va. June 11, 2010).[2] Because

---

[2] In her Response, Plaintiff reframes this claim as one for
malicious interference with a "prospective contract or economic
opportunity," as opposed to malicious interference with
contract. (Pl.'s Resp. (Doc. 17) at 7.) Plaintiff is correct
that this is a recognized tort in North Carolina. See Beverage
Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC,
368 N.C. 693, 701, 784 S.E.2d 457, 463 (2016). To state a claim
for what is properly labelled malicious interference with
prospective economic advantage, a plaintiff must allege that the
defendant interfered "with a business relationship 'by
maliciously inducing a person not to enter into a contract with
a third person, which he would have entered into but for the
interference, . . . if damage proximately ensues, when this
interference is done not in the legitimate exercise of the
interfering person's rights.'" Id. (omission in original)
(quoting Spartan Equip. Co. v. Air Placement Equip. Co., 263
N.C. 549, 559, 140 S.E.2d 3, 11 (1965)).

Even if the court were to accept this post hoc reframing
Plaintiff's Complaint, Plaintiff would still fail to state a
claim for the same reasons her malicious interference with
contract claim fails — she fails to submit any facts to create a
reasonable inference that Defendants took any unlawful actions
whatsoever.

Plaintiff fails to satisfy prong three of the malicious interference test — that Defendants "intentionally induced the third person not to perform his or her contract with plaintiff" — the court need not address the remaining elements.

The court will therefore dismiss Plaintiff's malicious interference with contract claim under Rule 12(b)(6).

## B.    **Blacklisting**

The North Carolina statute prohibiting blacklisting provides in full as follows:

> If any person, agent, company or corporation, after having discharged any employee from his or its service, shall prevent or attempt to prevent, by word or writing of any kind, such discharged employee from obtaining employment with any other person, company or corporation, such person, agent or corporation shall be guilty of a Class 3 misdemeanor and shall be punished by a fine not exceeding five hundred dollars ($500.00); and such person, agent, company or corporation shall be liable in penal damages to such discharged person, to be recovered by civil action. This section shall not be construed as prohibiting any person or agent of any company or corporation from furnishing in writing, upon request, any other person, company or corporation to whom such discharged person or employee has applied for employment, a truthful statement of the reason for such discharge.

N.C. Gen. Stat. § 14-355. To violate the statute, the statements made to the prospective employer must have been unsolicited. See Holroyd v. Montgomery Cty., 167 N.C. App. 539, 545, 606 S.E.2d 353, 358 (2004); see also Miller v. N.C. State Univ., No. 5:18-CV-523-FL, 2019 WL 3686592, at *6 (E.D.N.C. Aug. 6, 2019)

-11-

(dismissing the plaintiff's blacklisting claim when the plaintiff failed to allege that the communication at issue was "unsolicited" or "not 'a truthful statement of the reason for such discharge.'" (quoting N.C. Gen. Stat. § 14-355)).

A court in the Western District of North Carolina, as Defendants note, held that an allegation that "an unnamed prospective employer was told a 'defamatory statement' at an unspecified time and place," was insufficient to plausibly state a claim for blacklisting. Bailiff v. Davenport Transp., Inc., No. 3:13-CV-308-GCM, 2013 WL 6229150, at *6 (W.D.N.C. Dec. 2, 2013).[3] That court found that it was "left with no more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation'" without "[s]ome information about the nature of the statement, or at least Plaintiff's understanding of the statement." Id. (quoting Iqbal, 556 U.S. at 678).

---

[3] Plaintiff attempts to diminish Bailiff's persuasiveness by pointing out that it was decided prior to the Fourth Circuit decision in SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412 (4th Cir. 2015). (Pl.'s Resp. (Doc. 17) at 15.) Plaintiff submits that the Fourth Circuit advised that courts should not "confuse[] probability and plausibility" and "subject the complaint's allegations to the familiar "preponderance of the evidence" standard." Id. at 425. Plaintiff argues that Defendants ask the court to do just this. (Pl.'s Resp. (Doc. 17) at 15.) The court is satisfied that Black & Decker does not affect the holding of Bailiff and that Plaintiff's claims still fail under the plausibility standard.

Defendants argue that this is what has occurred here:
Plaintiff fails to offer any factual support for her
blacklisting claim, instead only offering allegations that
"unidentified employees engaged in unidentified 'conduct' or
'misrepresentations' at unidentified times/place and in
unidentified manners . . . ." (Defs.' Br. (Doc. 10) at 6.) The
court agrees.

Plaintiff only alleges the following concerning any
potential blacklisting: "Defendant blacklisted plaintiff in
violation of N.C. Gen. Stat. § 14-355, and has maliciously
interfered with her right to seek employment," (Compl. (Doc. 1)
¶ 89), and "[u]pon information and belief, following plaintiff's
application, defendant's physicians or other employees at the
Wilkes Clinic, through misrepresentations or other conduct,
induced WFU not to employ plaintiff." (Id. ¶ 58.) The first
allegation is plainly nothing but a legal conclusion, which is
insufficient to state a plausible claim of blacklisting. See
Iqbal, 556 U.S. at 678.

The second allegation is similarly deficient. As with
Plaintiff's malicious interference with contract claim, there
are no allegations as to what misrepresentations were made or
actions taken — only a vague, conclusory statement; there are
simply no facts in the Complaint that "nudge the claim from

-13-

possible to plausible." Hudson, 2010 WL 2365588, at \*5. While

Plaintiff asserts in her response that Defendants "sent

unsolicited messages to WFU to stop her from being employed by

WFU," (Pl.'s Resp. (Doc. 17) at 13), there are no facts alleged

in the Complaint that support this assertion.

Plaintiff attempts to distinguish this case from Bailiff,

because here, there is a specific employer, WFU, and Plaintiff

was offered a job, as opposed to Bailiff, where the plaintiff

did not specify the employer or have the same prospects for the

position that Plaintiff alleges she had here. While this is

true, Plaintiff's claim still fails to allege any facts to

"allow[] the court to draw the reasonable inference that the

defendant is liable" and demonstrate "more than a sheer

possibility that a defendant has acted unlawfully," because,

regardless of whether Plaintiff identifies a specific employer,

she still fails to identify any actions taken or representations

made by Defendants beyond one vague statement. Iqbal, 556 U.S.

at 678 (citing Twombly, 550 U.S. at 556–57).

Because Plaintiff fails to submit sufficient facts to

plausibly state a claim, the court will dismiss Plaintiff's

blacklisting claim under Rule 12(b)(6).

-14-

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the court will dismiss Plaintiff's malicious interference with contract and blacklisting claims under Rule 12(b)(6).

**IT IS THEREFORE ORDERED** that Defendants' Partial Motion to Dismiss, (Doc. 9), is **GRANTED.**

This the 29th day of June, 2020.

_____
United States District Judge